**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

**DONALD WILLIAMS,**

    Plaintiff,                                          Case No. 1:06-CV-0635

v                                                                         Hon. Robert Holmes Bell
                                                                          Chief, U.S. District Judge

**GRAND RAPIDS PUBLIC LIBRARY,**

    Defendant.
                                                                                                        /

**DONALD WILLIAMS**                                          **DANIEL A. OPHOFF (P23819)**
44 ½ S. Division., Apt. 37                                   Assistant City Attorney
Grand Rapids, MI  49503                                      Attorney for Defendant
                                                                                            300 Monroe Ave., NW, Suite 620
                                                                                            Grand Rapids, MI  49503
                                                                                            (616) 456-4023
                                                                                                                                /

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNDER AUTHORITY OF FED.R.CIV.P. 56(b) AND(c)

### STATEMENT OF THE CASE

This action was filed by an In Pro Per Plaintiff asserting violations of his constitutional rights based on a single event which occurred in the Grand Rapids Public Library (GRPL). Plaintiff was excluded from the GRPL for approximately six hours after violating GRPL policies relating to creating a disturbance. Plaintiff claims $15,000,000 in damages for this single event.

The Plaintiff's complaint alleges an action based on 42 U.S.C. § 1983 asserting in summary form violations of his constitutional rights for being excluded from the Library for viewing semi-nude images of Veronica Zemanova, violations of his rights to redress his expulsion and for racial discrimination based on comments made to him two

weeks after his expulsion from the GRPL. Plaintiff's complaint alleges constitutional violations of the First, Fourth, Fifth, Eighth and Fourteenth amendments to the U.S. Constitution and federal law prohibiting racial discrimination (42 USC § 2000 *et. seq.*).

## FACTUAL SUMMARY

The events which precipitated this action primarily occurred on September 21, 2005. By Plaintiff's deposition transcript (attached hereto as Williams Dep., Ex C) and Plaintiff's complaint he arrived at the GRPL at 11:05 a.m. The Plaintiff and one of Defendant's employees, Tim Gleisner, state Plaintiff had used the GRPL for legal research without incident at least once or twice a week for what appears to be several years prior to September 21, 2005. (Tim Gleisner Affidavit, Ex. A; Williams Dep., Ex. C at p. 38) Indeed Plaintiff continued to use GRPL after September 21, 2005 for research presumably for this lawsuit against the GRPL up until the date this action was filed in 2006. Since this action was filed, Plaintiff asserts he has not been back in the GRPL to avoid a "conflict of interest." (Williams Dep., Ex. C at pp. 38-40)

According to Plaintiff's complaint and deposition testimony, again with some precision, at 2:05 p.m. he was viewing images on his personal laptop computer. There was some dispute about exactly what Plaintiff was viewing on his computer. There is no dispute that when Tim Gleisner asked Plaintiff to turn off his laptop computer, an argument ensued. (Williams Dep., Ex. C at p. 78; Tim Gleisner Affidavit, Ex. A) Tim Gleisner asserts that Plaintiff claimed he had an absolute right to publicly view any image he chose in the GRPL. Gleisner eventually asked Plaintiff to leave the GRPL as he continued to create a disturbance by arguing about his rights to publicly view what he wanted in the GRPL. (Tim Gleisner Affidavit, Ex. A) Plaintiff's deposition testimony is

that immediately after being asked to leave the Library for the rest of the day (approximately 6 hours), Plaintiff went to his residence and began working on the complaint he filed in this matter. Plaintiff's deposition testimony is that immediately after being ejected from the GRPL he knew he was going to file a lawsuit. (Williams Dep., Ex. C at p. 85)

With precision, Plaintiff's complaint relates that he returned to the Library at 5:45 p.m. that day to file a complaint based on Tim Gleisner's action. Plaintiff's deposition testimony confirms his precision. (Williams Dep., Ex. C at p 88) Mr. Gleisner advised Plaintiff that the Library had no specific form labeled complaint but the Library did have a suggestion form. Mr. Williams was invited to write out his complaint on the suggestion form. Additionally, Plaintiff was invited to speak with Tim Gleisner's supervisor, which he did.

Assistant Library Director William Baldridge spoke to Plaintiff on September 15, 2005. (William Baldridge Affidavit, Ex. B) Mr. Baldridge explained the Library policy on publicly viewing objectionable material. Mr. Williams was quick to respond that he was asked to leave the Library for publicly viewing a partially nude woman on his own computer and was not connected to the internet. Mr. Williams, according to Mr. Baldridge, was less interested in redressing his complaint and more interested in establishing whether Tim Gleisner was authorized by the Library to ask him to turn off the images on his computer and authorized by the Library to ask him to leave the GRPL. Mr. Baldridge affirmed that he was and Mr. Williams left.

Plaintiff's actions on September 21, 2005 take on significance when seen in historical context. Mr. Williams is a frequent pro se litigant in the federal court system.

(See this Court's Opinion, dated November 14, 2006, Docket 26)  Indeed, by his deposition testimony, Plaintiff has regularly filed actions based on 42 U.S.C. § 1983 since he stopped working in 2001.  Mr. Williams related in his deposition testimony that he began his in pro per career filing an action against the Oklahoma City Housing Authority while he was a student in Oklahoma City.  Plaintiff's own use of the GRPL is focused on legal research which he was conducting on September 21, 2005.  Mr. Williams clearly knows and knew as of September 21, 2005 what was needed to state a claim against the GRPL using 42 U.S.C. § 1983.  He came back after spending three hours drafting his complaint to make sure he had what he thought the requisites were for an action against the GRPL.

The deliberate nature of his actions is also displayed by the amended complaint he filed with this Court.  In his amended complaint for the first time, Mr. Williams attributes additional comments to Tim Gleisner both before the Plaintiff was asked to leave to the GRPL on September 21, 2005 and after.  These comments Mr. Williams argues, add an additional claim of discrimination to his compliant and further shore up the deliberate nature of Mr. Gleisner's asserted unconstitutional activity.  The fact that these comments are first seen over a year and a half after Mr. Williams drafted his complaint, calls into question his credibility in this matter.

The first of these comments attributed to Mr. Gleisner occurred before he confronted Mr. Williams about the images on his computer.  Mr. Williams' deposition testimony is that at his table by his own estimation, at least 25 feet from where Mr. Gleisner was working, he overheard Mr. Gleisner say in a loud voice, I bet I can get him. (Williams Dep., Ex. C at p. 61)  Mr. Williams' deposition testimony is that all of the

rest of any conversation Mr. Gleisner had was not said in a loud voice and could not be heard.  Further it is interesting to note that Mr. Williams, by his own deposition testimony (Williams Dep., Ex. C at p. 49), locates his computer screen as facing away from Mr. Gleisner.  Mr. Williams has not explained what it is that Mr. Gleisner was referring to, only that his comment reinforces the deliberate nature of the constitutional violations visited upon Mr. Williams.

Mr. Williams' amended complaint also adds a claim based on racial discrimination.  Mr. Williams' racial discrimination claim is based on another comment allegedly made by Mr. Gleisner approximately two weeks after September 21, 2005.  Apparently, Mr. Gleisner asked Mr. Williams, in a threatening manner, "may I help you?"  This comment as Mr. Williams characterized it, was designed to racially intimidate him in violation of his constitutional rights.  Again, this comment is only found in Mr. Williams' amended complaint filed approximately a year and a half after the incident.  Defendant asserts Plaintiff seems to make things up as he goes along to strengthen what he believes is important for his claims.

## LAW AND ARGUMENT

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.,* 395 F.3d 338 (6th Cir. 2005); *Layne v. Bank One,* 395 F.3d 271 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." *Tucker v. Union of Needletrades, Industrial and Textile Employees,* 407 F.3d 784 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Minadeo v. ICI Paints,* 398 F.3d 751 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the non-moving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335 (6th Cir. 1993). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Although the facts are viewed in a light most favorable to the nonmoving party, he may not rest on the mere allegations of his pleadings. Fed.R.Civ.P. 56(e); *Daniel v. Cantrell,* 375 F.3d 377 (6th Cir. 2004); *Thompson v. Bell*, 373 F.3d 688 (6th Cir. 2004). "A mere scintilla of evidence is insufficient." *Humenny v. Genex Corp.,* 390 F.3d 901 (6th Cir. 2004); *Leadbetter v. Gilley,* 385 F.3d 683 (6th Cir. 2004). Further, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527 (6th Cir. 2002) (quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir. 1987). Additionally, where the factual context makes a party's claim

implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 323; *Matsushita,* 475 U.S. at 586. A party with the burden of proof opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *See Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001).

Somewhat different standards apply when the party with the burden of proof seeks summary judgment. When the moving party does not have the burden of proof, he need only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has reiterated that the party with the burden of proof faces "a substantially higher hurdle" when seeking summary judgment in his favor. *Arnett v. Myers,* 281 F.3d 552 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036 (6th Cir. 2001). Where the moving party bears the burden of persuasion at trial, the moving party's initial summary judgment burden is higher, "in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett,* 281 F.3d at 561; *Cockrel,* 270 F.3d at 1056 (quoting 11 James William Moore, et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, a summary

judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999).

The court must therefore carefully differentiate between the summary judgment standard applicable to plaintiff's motion and that applicable to defendant's cross-motion.

## LAW AND ARGUMENT

### 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, a Plaintiff must allege the violation of a right secured by federal constitution or laws which was caused by a governmental policy, custom or practice. The GRPL may not be held liable under §1983 for an injury caused solely by its employees or agents. *Monell v. Dept. of Social Servs.,* 436 U.S. 658 (1978). The Sixth Circuit has identified four avenues Plaintiff may take to prove the existence of an illegal policy or custom:

1. The municipality's legislative enactments or official agency policies;
2. Actions taken by officials with final decision-making authority;
3. A policy of inadequate training or supervision; or
4. A custom of tolerance or acquiescence of federal rights violations.

Based on Mr. Williams' return to the Library on September 21, 2005 at 5:45 p.m. and his subsequent conversation with Mr. Baldridge, Mr. Williams will apparently rely on the second avenue to prove governmental policy, custom or practice. However, Section 1983 offers a method and means for vindicating federal rights and does not offer a source of substantive rights itself and therefore a specific constitutional infringement is a required foundation in any action under 42 U.S.C. § 1983. Defendant GRPL asserts that no violation of Plaintiff's constitutional rights has occurred.

8

**Plaintiff's First Amendment Claim**

The Plaintiff alleges a violation of his First Amendment rights under the Fourteenth Amendment. Plaintiff's First Amendment rights protect his freedom of speech. Plaintiff was expelled from the Library for creating a disturbance. That is, Plaintiff was arguing with a GRPL employee in the Library during regular business hours. Defendant's duly adopted patron use rule specifically provide for expulsion of Library patrons who create a disturbance. (See William Baldridge Affidavit, Ex. B) Tim Gleisner was enforcing a GRPL official agency policy related to creating disturbances in the library.

Under First Amendment analysis, the Library is a limited public forum. *Neinast v. Bd. of Trs. of the Columbus Metro Library*, 346 F.3d 585 (6th Cir. 2003) (citing *Kreimer v. Bureau of Police for Town of Morristown,* 958 F.2d at 1242; *Sund v. City of Wichita Falls,* 121 F. Supp. 2d 530 (N.D. Tex. 2000); *Mainstream Loudoun v. Bd. of Trs. of Loudoun County Library,* 24 F. Supp. 2d, 552 (E.D. Va. 1998). Under this analysis a Library "is obliged only to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's interest in designating the Library as a public forum." *Kreimer,* 958 F.2d at 1262. Traditionally, libraries provide a place for "reading, writing and quiet contemplation." *Kreimer,* 958 F.2d at 1261. Such is the case at the GRPL.

The matter before the Court is then consideration of the denial of access to the Library based on a patron's failure to cease arguing with Library employees and creating a disturbance. The Library regulation prohibiting creating a public disturbance is properly reviewed under the rational basis standard. *See Thompson v. Ashe,* 250

9

F.3d 399 (6th Cir. 2001); *Memphis Am. Fed'n of Teachers, Local 2032 v. Bd. of Educ.,* 534 F.2d 699 (6th Cir. 1976). Both of these cases hold that when there is no been fundamental infringement of rights, review under a rational basis standard is appropriate. This test requires the court to ensure that the government has employed rational means to further its legitimate interests. *People's Rights Org., Inc. v. City of Columbus,* 152 F.3d 522 (6th Cir. 1998). Further, utilizing the rational basis review standard, a court will usually uphold regulations because the state's important regulatory interests are generally sufficient to justify them. *Citizens for Legislative Choice v. Miller,* 144 F.3d 916 (6th Cir. 1998); see also, *Anderson v. Celebrezze,* 460 U.S. 780, 788, 75 L.Ed.2d 574, 103 S. Ct. 1564 (1983). A library regulation survives rational basis review when the regulation provides a rational means to further the legitimate governmental interests of protecting and ensuring the peace and tranquility of a public place set aside for reading and quiet reflection. Certainly any rule prohibiting actions which disturb the peace and tranquility of a public library survive a constitutional challenge.

Further even if the Plaintiff's assertions are taken as correct and he was asked to leave the GRPL for what was being displayed publicly on his computer, the Library rules relating to internet pornography apply. The role of libraries is directly connected to cultural and enrichment and learning. Libraries provide internet access to enhance that goal and mission.

The United States Supreme Court in *United States v. American Library Association.,* 539 U.S. 194 (2003) addressed this issue. The court held that to the extent libraries provide internet access to "facilitate research, learning and recreational

pursuits by furnishing materials of requisite and appropriate quality" they meet these cultural and learning objectives. *Id.* at 203, 206. In reaching its decision, the court held that forum analysis and heightened scrutiny are incompatible with the discretion that public libraries must have to fulfill their traditional missions. Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them. *Id.* at 205. The Supreme Court went on to note that "most libraries already exclude pornography from their print collections because they deem it inappropriate for inclusion . . . it would make little sense to make library's judgments to block online pornography any differently, when these judgments are made for the same reasons." *Id.* at 208.

The nuance Plaintiff asserts on his pleadings, that is he was not publicly viewing internet pornography but was publicly viewing pornography from the internet downloaded at a previous time and location is truly a distinction without meaning in this instance. The issue is the public display of pornographic material in the GRPL. Library rules relating to viewing internet pornography apply in this situation and such an application is supported by the U.S. Supreme Court and the GRPL rule meets the requisite judicial scrutiny analysis. Nor should there be dispute that what Plaintiff was viewing was pornographic. Veronica Zemanova is prominently featured on the website pornstars.com as related in the attached affidavit of Tim Gleisner.

**Plaintiff's Due Process Claims**

Plaintiff asserts Fifth Amendment due process claims as part of his complaint. While not articulated clearly, Plaintiff seems to allege a deprivation of a protected right absent procedural due process. To prevail on a procedural due process claim, Plaintiff

11

must assert facts showing a recognized liberty or property interest and the abridgement of that right without appropriate process. *LRL Properties v. Portage Metro Housing Authority*, 55 F3d 1097 (6th Cir. 1995).

The facts presented by Plaintiff in his complaint and at his deposition showed he was accorded appropriate process on September 21, 2005. He was permitted to re-enter the Library at 5:45 p.m. Tim Gleisner had expelled him from the Library approximately three hours previously, however, instead of insisting that Plaintiff leave he responded to Plaintiff's request for a Library form on which he could file a complaint. Further, Plaintiff was invited to present his grievances to Assistant Library Director William Baldridge.

The Library met adequate complaint procedures by providing a suggestion form to Plaintiff for a written complaint. Plaintiff's argument that a specific form for complaints was required for appropriate process is specious. An individual with Mr. Williams' demonstrated writing skills certainly could write out a complaint without a form. The modification of the GRPL suggestion form for a written complaint is more than adequate. Mr. Williams demonstrated this himself by filing a written suggestion form containing his complaint albeit only days before filing this lawsuit.

In order to determine what process is in fact due, a court must consider all of the circumstances, and balance the competing interest to determine the appropriate level of procedure required. Due process generally requires at a minimum notice and an opportunity to defend oneself. *Goss v. Lopez,* 419 U.S. 565 (1975). Defendant asserts the procedural due process Mr. Williams was due on September 21, 2005 did not need to be extensively formal. He was excluded from the Library for six hours. He was

permitted to return to the Library at 5:45 p.m. to file a complaint. The next day, presumably, Mr. Williams was happily engaged in his legal research to support the action he filed against the Grand Rapids Public Library. The notice of the charge or reason for his expulsion and the opportunity to present written and oral complaint to Assistant Library Director William Baldridge was adequate in this circumstance. A six hour expulsion from the GRPL is a diminimus infringement on any right Mr. Williams had to use the GRPL facilities.

Plaintiff's due process claim to the extent it relies on a theory of substantive due process is equally devoid of merit. Plaintiff asserts that the GRPL is guilty of arbitrary conduct when it excluded him from Library privileges for six hours on September 21, 2005. The doctrine of substantive process protects the individual against arbitrary government action. *Wolf v. McDonnell*, 418 U.S. 539 (1974). However, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." See *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). Certainly, in this instance all the evidence indicates that the GRPL is not guilty of egregious or arbitrary conduct. The facts presented to this Court instead suggest manipulated circumstances designed to provide fodder for this lawsuit.

**Plaintiff's Search and Seizure and Cruel and Unusual Punishment Claims**

Plaintiff's search and seizure and cruel and unusual punishment arguments are equally unsupportable. Plaintiff argues that by walking up behind him and viewing what was publicly displayed on Plaintiff's laptop computer, Tim Gleisner violated his Fourth Amendment Constitutional rights. The Fourth Amendment protects Plaintiff from unreasonable searches and seizures. *Monroe v. Pape*, 365 U.S. 167 (1961). In this

13

instance Plaintiff has not asserted that any employee of the GRPL violated his Fourth Amendment Constitutional rights but has focused his claim of constitutional infirmity completely against the GRPL.

Plaintiff must show a GRPL custom, policy or practice which caused the asserted Fourth Amendment constitutional violation. He has not offered any facts supporting his assertion that a custom, policy or practice of the GRPL violated his Fourth Amendment rights. Regardless, the facts alleged, under any circumstance, do not set out a Fourth Amendment constitutional violation. What Plaintiff was viewing was publicly displayed and in plain view to all who cared to walk near Mr. Williams' work table. Simply viewing what is publicly displayed is not a constitutional violation.

Plaintiff also argues that excluding him from the GRPL for six hours was cruel and unusual punishment. The Eighth Amendment does provide protection against cruel and unusual punishment, however, the Eighth Amendment is limited to constitutional protections offered for incarcerated individuals, *Rhoades v. Chapman*, 452 U.S. 337 (1981) and pre-trial detainees, *Roberts v. City of Troy*, 773 F.2d 720 (1995). The Eighth Amendment never has offered constitutional protection for an unincarcerated person who has been excluded from a library.

**Plaintiff's Racial Discrimination Claims**

Plaintiff also asserts a statutory racial discrimination claim. Based on Tim Gleisner's comment "may I help you" which occurred approximately two weeks after the September 21, 2005 incident Mr. Williams, a black man, claims he was intimidated and racially discriminated against in violation of §1983.

Historically, the deposition transcript of Mr. Williams and the Affidavit of Tim Gleisner display that this single sentence was the only evidence Mr. Williams could offer to support his racial discrimination claim. He had free access to the GRPL. He had no confrontation with GRPL staff before or after September 21, 2005, Mr. Gleisner's single statement notwithstanding. Defendant asserts Tim Gleisner's single sentence does not offer a sufficient factual predicate for a claim of racial discrimination based on 42 U.S.C. §2000 *et seq.*

Further, Mr. Williams' claim again is based on an assertion that a custom, practice or procedure of the GRPL caused the statutory violation he complains of. However he has shown no fact which would support that conclusion. Therefore, his claims of racial discrimination are groundless and should be dismissed.

## **CONCLUSION**

For the reasons set out above and the exhibits attached to this brief, all of Plaintiff's constitutional claims as set out in his amended complaint are factually unsupported and should be dismissed.

Additionally, this Court should closely scrutinize each of Plaintiff's factual assertions which are in variance with the affidavit testimony of Tim Gleisner and William Baldridge. Defendant asserts that Plaintiff's factual allegations have been massaged over time to meet what he perceives are the legal requirements for a cause of action against the GRPL.

The GRPL prays this Honorable Court grant its motion for summary judgment on Defendant's claims.

                                                          Respectfully submitted,

Dated:  July 16, 2007                         By: _/s/ Daniel A. Ophoff_____
                                                         **DANIEL A. OPHOFF (P23819)**
                                                         Assistant City Attorney
                                                         *Attorney for Defendant*
                                                         300 Monroe Ave., NW
                                                         Grand Rapids, MI  49503
                                                         (616) 456-4023