UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONALD WILLIAMS,                      )
                                      )
        Plaintiff,                  )   Case No. 1:06-cv-635
                                      )
v.                                    )   Honorable Robert Holmes Bell
                                      )
GRAND RAPIDS PUBLIC LIBRARY,          )
                                      )   **REPORT AND RECOMMENDATION**
        Defendant.                  )
_____)

       This is a civil rights action brought by a *pro se* plaintiff pursuant to 42 U.S.C. § 1983. The claims in plaintiff's amended complaint arise from an incident that took place in the Grand Rapids Public Library on September 21, 2005. Plaintiff alleges that a library employee directed him to leave the Main Branch of the Library for viewing a picture of a nude woman on his computer. Plaintiff's period of exile from the library lasted about three hours, as he returned later in the afternoon and was never again excluded. On the basis of this event, plaintiff asserts a violation of his rights under numerous amendments to the Constitution, including the First, Fourth, Eighth, and Fourteenth Amendments, and violations of state law, MICH. COMP. LAWS § 37.2302, 600.2907. He further alleges that the library employee's actions were motivated by racial discrimination. The only named defendant is the "Grand Rapids Public Library," which is an arm of the City of Grand Rapids and not a separate municipal corporation.

       This matter is before the court on the parties' cross-motions for summary judgment. (docket #'s 58, 62). Chief Judge Robert Holmes Bell has referred this case to me for the issuance

of a report and recommendation on all case dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (Order of Reference, docket # 5). On September 20, 2007, I conducted a hearing on the cross-motions. For the reasons set forth below, I recommend that plaintiff's motion for summary judgment be denied and that defendant's motion be granted.

## **Applicable Standard**

As the Sixth Circuit has noted, the federal courts have entered a "new era" in summary judgment practice. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1478-81 (6th Cir. 1989). While preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial. Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tatis v. U.S. Bancorp*, 473 F.3d 672, 675 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *See Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (quoting *Anderson*, 477 U.S. at 251-52); *see also Young v. Township of Green Oak*, 471 F.3d 674, 678 (6th Cir. 2006).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Kellogg v. Sabhlok*, 471 F.3d 629, 631

(6th Cir. 2006). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Once defendant shows that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). To sustain this burden, plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007); *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006).

**Proposed Findings of Fact**

In reviewing defendant's motion for summary judgment, this court must accept plaintiff's version of the facts, if established by affidavit, deposition, or other admissible evidence. In the present case, plaintiff's version of events is set forth in his verified amended complaint, affidavit and deposition. The facts, with all inferences weighed in plaintiff's favor, are as follows:

Plaintiff is a resident of the City of Grand Rapids. He is a frequent user of the Main Branch of the Grand Rapids Public Library, principally for purposes of performing legal research in aid of his many *pro se* lawsuits. (Dep. at 40-41). The record is devoid of any problem faced by plaintiff in using the library before the events of September 21, 2005. At about 11:00 a.m. that day, plaintiff entered the main branch of the Grand Rapids Public Library with his computer, for the purpose of doing statutory research. (Dep. at 60).

Shortly after 2:00 p.m., plaintiff overheard a library employee, known to him as Tim, speaking to another employee at the reference desk. The only sentence that plaintiff overheard was Tim's statement, "I'll bet I can catch him." (Am. Compl. ¶ B(a)2; Dep. at 61-63). At 2:15 p.m., plaintiff was viewing a topless picture of Veronica Zemanova on his computer. He looked behind him and saw Tim standing eight to ten feet away, looking over his shoulder. Tim walked up to plaintiff and said, "You can't view that in here." Plaintiff told Tim that he was not on the Internet and that the picture was on his personal computer. Tim said that he did not care and that plaintiff could not view the picture in a public place. Tim said, "I'm going to have to ask you to leave. Close it up, you're done." Plaintiff asked whether he was banned from the library permanently, and Tim said, "No, just for the day." (Am. Compl. ¶ B(a)3). Plaintiff deleted the picture from his computer and left. (Dep. at 82-85).

At 5:45 p.m. on the same day, plaintiff returned to the library to file a complaint. He saw Tim at the information desk near the library entrance. He asked Tim for a complaint form. Tim said that there were no complaint forms, just suggestion forms, and suggested that plaintiff speak to Tim's supervisor. Plaintiff went to the fourth floor and spoke to the assistant director of the library, William Baldridge. Mr. Baldridge said that "it's our policy not to allow the viewing of nudity in the library" and confirmed that Tim was authorized to tell plaintiff to leave the library for the day. After further suggestions from plaintiff as to how Tim could have comported himself with more tact, Mr. Baldridge gave plaintiff a suggestion form for purposes of submitting his complaint. (Am. Compl. ¶ B(a)4).

One or two weeks later, plaintiff returned to the library and again set up his laptop computer. Tim walked up to him and asked, "Is there anything I can do for you?" Plaintiff just

shook his head no, because he had not asked for assistance. Plaintiff asserts that Tim spoke this sentence in a menacing and intimidating manner, indicating to plaintiff that Tim is racist and discriminates against black people. (Am. Compl. ¶ B(a)5).

Approximately one year later, plaintiff submitted to the library a suggestion form dated September 1, 2006. The suggestion form complained about plaintiff's expulsion from the library on September 21, 2005. At the end of his chronicling of events, plaintiff suggested that the library "give people a warning and inform them of your policy prohibiting the viewing of pornography before the [library] deprived citizens of their constitutional rights to public facilities."[1] (Am. Compl., Ex. 1).

This lawsuit was commenced on September 5, 2006, by the filing of plaintiff's original complaint. The complaint did not allege racial discrimination. By amended complaint filed in January 2007, plaintiff asserted that Tim's actions were racially motivated.

---

[1] The affidavit of Tim Gleisner (docket # 59, Ex. A), the library employee involved, tells a somewhat different story. Mr. Gleisner asserts that he was assisting a mother and young daughter and in doing so passed the work table used by plaintiff. He asserts that he observed pornographic images on the laptop computer, which displayed an Internet website banner for "viewpornstars.com." He avers that the image displayed was a fully nude female image performing a sexual act upon herself. When he told plaintiff that the viewing of pornography was not allowed, plaintiff argued in a raised voice with him. After two or three minutes, Tim decided that plaintiff was creating a disturbance and asked him to leave the library for the day. Therefore, Mr. Gleisner bases his decision to expel plaintiff on plaintiff's disruptive behavior, not the content of the picture he was viewing. For purposes of defendant's summary judgment motion, however, the court must accept plaintiff's version of events.

**Discussion**

**1.**

Plaintiff asserts that he was expelled from the Grand Rapids Public Library for a three-hour period for viewing nudity on his laptop computer. He asserts that this action violated his rights under numerous constitutional provisions, including the First, Fourth, Eighth, and Fourteenth Amendments. He also asserts that Mr. Gleisner's conduct was racially motivated. The only defendant named, however, is the Grand Rapids Public Library, an arm of the City of Grand Rapids. The Grand Rapids Charter (Title XIII, § 2) creates a Board of Library Commissioners of the City of Grand Rapids and grants the Board "the entire management and control of the Public Library of the City and of all property and assets belonging thereto devoted to or intended for library purposes." As the named defendant, the Grand Rapids Public Library, is not a separate corporate entity, the case must be deemed as brought against the City of Grand Rapids, a municipal corporation. Defendant's motion for summary judgment raises the issue, among others, whether plaintiff has established grounds for municipal liability on his constitutional claims brought pursuant to 42 U.S.C. § 1983. Upon review of the record, I conclude that plaintiff has failed to meet his burden to establish grounds for municipal liability.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities may not be held liable in a section 1983 action on a *respondeat superior* theory for the actions of their subordinates. 436 U.S. at 691. Rather, the municipality is only responsible when, through its own deliberate content, the municipality was the "moving force" behind the injury alleged. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). Liability may be found against a municipality under section 1983 when its employees

have acted pursuant to an official policy or custom. *Monell*, 436 U.S. at 694-95; *see Graham ex rel. Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 403-04 (citations omitted). "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. "There must be a direct causal link between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation. These stringent standards are necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Graham*, 358 F.3d at 383 (citations omitted). "A plaintiff asserting a § 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [City] itself and show that the particular injury was incurred because of execution of that policy." *Graham*, 358 F.3d at 383.

The only policies before the court are two one-page policies promulgated by the Library Commission. These are appended to defendant's motion for summary judgment (docket # 58) as exhibits to the affidavit of William Baldridge. The first document is entitled "Patron Rules

& Responsibilities." It sets forth a number of prohibitions involving things such as smoking or drinking in the library or creating a disturbance. Nothing in the Patron Rules & Responsibilities sheet reflects any policy or custom against the viewing of nudity in the library. Indeed, plaintiff's own exhibits (docket #'s 62, 67) are pictures of nude women shown in art books contained in the library's own collection. The one-page set of rules for Internet use does prohibit the public viewing of "profane, obscene or injurious language, text or graphics." Similarly, the policy states that "the library does not allow anyone using a computer on library premises to view matter that is obscene or material that is sexually explicit and harmful to minors, because a minor could view it." Although this policy can fairly be read to prohibit obscenity, it is well understood that nudity and obscenity are not synonymous.

        Consequently, the record is devoid of any official policy or custom of the City of Grand Rapids, or its Library Commission, that would prohibit the viewing of nudity in the library or allow a library employee to take action against it. If, as plaintiff alleges, Mr. Gleisner enforced such a rule on his own initiative, this action cannot be attributed to the official policies of the Library Commission or the City.

        The Supreme Court has recognized that policy can arise from the action of executive decision makers as well as legislative bodies. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986). The Court has made clear, however, that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 481. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481. The decision whether a particular official has final policymaking authority is a question of state law for the court, not a jury, to decide. *Jett v. Dallas Indep. Sch. Dist.*,

491 U.S. 701, 737 (1989). Plaintiff appears to argue that Mr. Baldridge, the former assistant library director, confirmed that there was a policy against viewing nudity and that this policy is sufficient to subject a municipality to section 1983 liability. The record is devoid of evidence, however, that the assistant library director had any policy-making authority. As noted above, the City Charter invests the Library Board of Commissioners with "the entire management and control" of the library. The City Charter goes on to authorize the Board to employ in its management of the library a librarian and such assistants and other employees as it may determine. (Title XIII, § 7). The very same section, however, invests the Library Commission with the power to establish rules and regulations. Management employees, such as the assistant library director, are not invested with such legislative authority. In summary, any deprivation of liberty or of First Amendment rights that occurred on September 21, 2005, cannot be attributed to the City of Grand Rapids for purposes of section 1983, as no policy of the City can be deemed the "moving force" behind these events.

      The same conclusion applies to plaintiff's claims of race discrimination. As an initial matter, plaintiff's allegations, accepted as true, are utterly insufficient to support a jury finding that Mr. Gleisner's actions were racially motivated. The overheard statement, "I bet I can catch him," made ten minutes before the confrontation, is evidence of nothing. Plaintiff cannot prove the context of this statement, nor could he ever prove to a jury's satisfaction that it referred to him. The alleged incident, coming two weeks later, in which Gleisner offered to help plaintiff in a "menacing" way is plainly insufficient to show racial bias and, in all events, is too remote in time to reflect on Gleisner's state of mind two weeks earlier. These problems of proof aside, however, plaintiff's claim of race discrimination against the City must fail for lack of an official policy or custom motivating Gleisner's alleged act. The record does not reflect any municipal policy or custom

whatsoever favoring discrimination on account of race. Consequently, plaintiff cannot show that the City of Grand Rapids, or its Library Commission, was the "moving force" behind any alleged violation.

**2.**

Plaintiff's amended complaint contains allegations that defendant violated state law. (Am. Compl. ¶¶ A(2), C(2), D(9), docket # 47). I recommend that the court decline to exercise supplemental jurisdiction over plaintiff's state-law claims. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *Widgren v. Maple Grove Township*, 429 F.3d 575, 586 (6th Cir. 2005); *see also Hall v. Scotts Co.*, 211 F. App'x 361, 363 (6th Cir. 2006); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003)("The usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of on summary judgment.").

**Recommended Disposition**

Accepting all of plaintiff's allegations as true, I find that plaintiff has failed to establish grounds for municipal liability under *Monell*. His constitutional claims against the Grand Rapids Public Library, an institution of the City of Grand Rapids, must therefore fail. I recommend that defendant's motion for summary judgment (docket # 58) be granted and that plaintiff's motion

for summary judgment (docket # 62) be denied.  I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state-law claims.

Dated:  September 21, 2007          /s/  Joseph G. Scoville
                                    United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).